# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-212


**JOEL MAX MOYER**

**VERSUS**

**NIKKI ANN MOYER**



**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 20072491
HONORABLE LILYNN ANNETTE CUTRER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


**REVERSED IN PART AND AFFIRMED IN PART.**

**Steven W. Hale**
**Attorney at Law**
**1735 Ryan St.**
**Lake Charles, LA 70601**
**(337) 433-0612**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Joel Max Moyer**

**John Green**
**AAA Legal Services, Inc.**
**1135 Hodges St.**
**Lake Charles, LA 70601**
**(337) 990-0060**
**COUNSEL FOR PLAINTIFF /APPELLEE:**
**Joel Max Moyer**

**W. Mitchell Redd**
**Attorney at Law**
**P.O. Box 1566**
**Lake Charles, LA 70602**
**(337) 421-1615**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Nikki Ann Moyer**

**GREMILLION, Judge.**

The defendant, Nikki Moyer[1], appeals the trial court's judgment in favor of the plaintiff, Joel Meyer, pertaining to child support, contempt, and attorney fees. For the following reasons, we reverse in part and affirm in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Nikki and Joel divorced in August 2008. Joel was ordered to pay $960.00 per month in child support retroactive to May 9, 2007, the date the petition for divorce was filed. Pursuant to a stipulated judgment, the parties agreed to joint custody of their two minor children, with Nikki being the domiciliary parent and Joel having visitation rights. In June 2008, Joel filed a petition to have custody changed, which was denied.

In September 2011, Nikki filed a rule for judgment of past due child support, contempt, and attorney fees. On January 17, 2012, Joel filed a motion for immediate return of the minor children and immediate ex parte custody, which was denied. This motion also sought to suspend his child support obligation. Nikki was ordered to immediately return the children to Calcasieu Parish.

A hearing was held on January 23, 2012, after which the trial court rendered a judgment prohibiting Nikki from removing the children from Calcasieu Parish for any reason.

Following a September 2012 trial, the trial court issued written reasons in November 2012, finding Nikki in contempt, sentencing her to thirty days in jail, and awarding $5,000.00 in attorney fees to Joel. The trial court further suspended Joel's child support obligation from May 1, 2011, through January 31, 2012, and

---

[1]Nikki has remarried twice since her divorce from Joel, first to Charles Deville and second to Bentley Stewart.

dismissed Nikki's contempt rule against Joel at her cost. Nikki now appeals and assigns as error:

1. The trial court erred in suspending the child support obligation of Joel for the entire period of May 1, 2011 to January 31, 2012.

2. The trial court erred in failing to find Joel in contempt of court for his failure to meet his child support obligation.

3. The trial court erred in the punishment placed on Nikki for the contempt findings, as same are excessive.

## DISCUSSION

We have reviewed the testimony presented at trial, and the trial court succinctly summarized the facts as follows:

Joel alleged that Nikki is in contempt of court for removing the residence of the children from Calcasieu Parish, allowing person[s] of the opposite sex to whom she was not married to stay overnight in presence of children, and failing to allow Joel right of first refusal for the custody of the children when left town. The evidence established that Nikki intentionally violated the Court's orders on multiple occasions.

Nikki acknowledged at trial that men spent the night with her while the children were in her care, which is in direct violation of the parties' Joint Custody Plan and the Court's judgment. She acknowledged that her husband, Charles Deville, spent the night with her before they were married. In addition, Nikki acknowledged that a boyfriend, Robert Stelly, also spent the night with her when the children were with her.

The evidence also established that Nikki traveled to Colorado with her husband, Bentley Stewart, on May 13, 2011. She left the children in the care of her mother. Nikki did not offer Joel the right to keep the children while she was in Colorado, which is in direct violation of the parties' Joint Custody Plan and the Court's judgment. In fact, Nikki did not even tell Joel that she was leaving. He learned through his son who showed him a picture of his mother's new apartment. There was also evidence presented that Nikki intended to relocate the children's residence to Colorado. Joel believed she would and filed an ex parte request for custody to prohibit her from removing the children's residence to Colorado. Nikki's answer to discovery indicated that her husband was seeking employment in Colorado and if they had relocated, she would have moved the children with her. Even if she did not relocate the children's

2

residence to Colorado, she clearly left them in the care of her parents from May 13, 2011 until July 7, 2011, without offering Joel the opportunity to care for them.

Nikki testified that she traveled to Illinois in early December, 2011, with her husband, Bentley Stewart, and children. She maintains that she did not intend the move to Illinois with the children, but just to vacation. However, the evidence clearly shows differently. Nikki testified that they did not have any money due to her husband being out of work and Joel not paying his child support. So, her husband's father offered them an opportunity to come to Illinois and have Christmas. Nikki removed the children from school on December 2, 2011. Initially, she home schooled the children, but later enrolled them in school in Illinois further evidencing her intent to reside in Illinois with the children. Nikki admitted that she did not notify Joel that she was relocating to Illinois with the children. She testified that this was because Joel had not talked to her or the children for the six months prior to their leaving. However, the testimony indicated that she was not truthful on this point.

In summary, Nikki has violated the Court's orders on multiple occasions. After hearing the evidence presented, it is clear that Nikki has no respect for the parties' agreements and/or the Court's orders. Nikki further evidenced her lack of respect for the Court and others when she failed to testify truthfully on numerous issues such as Joel's payment of child support, Joel's contact with her and the children, her relocations. The Court did not find Nikki credible in her testimony given the many occasions that the evidence clearly did not support her testimony.

Louisiana Revised Statute 9:315.23 states:

> If one joint custodial parent or his agent is intentionally secreting a child with the intent to preclude the other joint custodial parent from knowing the whereabouts of the child sufficiently to allow him to exercise his rights or duties as joint custodial parent, the latter may obtain from the court an order suspending or modifying his obligation under an order or judgment of child support. However, such circumstances shall not constitute a defense to an action for failure to pay court-ordered child support or an action to enforce past due child support.

Louisiana Revised Statute 9:315.21(C) states in pertinent part:

> Except for good cause shown, a judgment modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.

Nikki argues that the suspension of child support payments pursuant to La.RS. 9:315.23 can only be retroactive to January 17, 2012, the date of judicial demand, rather than May 1, 2011. We agree. The trial court suspended Joel's child support obligation from May 13, 2011 through July 7, 2011 (the months that the children lived with Nikki's parents), from August 1, 2011 through December 1, 2011 (the months that she refused to allow him visitation), and December 2, 2011 through January 17, 2012 (the period in which she relocated the children to Illinois).[2] The last sentence of La.R.S. 9:315.23 clearly envisions a prospective suspension of payment once the payor files for a modification suspending the payments. Thus, Joel's suspension of payment could only be effective from the date of demand forward, which was January 17, 2012.

Nikki further argues that public policy demands that the children not suffer due to the actions of the parent. The legislature has clearly set forth a provision in La.R.S. 9:315.23 that punishes a parent who intentionally prohibits the other parent from exercising his visitation rights with his children by keeping the children's whereabouts secret. It is not within our purview to change the laws as written. Furthermore, as the trial court noted, "there are occasions where a parent's blatant and intentional disregard for the other parent's rights to visit their children and serve as a joint custodian justify the suspension or modification of child support. This is one of those rare instances." We agree. However, it is incumbent upon the parent being denied visitation to file a motion to suspend payments as soon as possible. We must reverse that portion of the trial court's judgment suspending

---

[2]Although not in the record, it appears that Joel filed an ex parte request for custody sometime prior to July 1, 2011, because there is a stipulated judgment from that date prohibiting the parties from removing the children with the intent of relocating their residence from Calcasieu Parish. Joel further withdrew his request for an ex-parte temporary custody order. This is insufficient in terms of filing a motion to suspend child support payments pursuant to La.R.S. 9:315.23.

child support payments from May 2011 through January 17, 2012. Accordingly, the amount of the suspension will be reduced by eight months at $960.00 per month for a total of $7,680.00.

## ASSIGNMENT OF ERROR TWO

Nikki's second assignment of error pertains to the last sentence of La.R.S. 9:315.23 in which the legislature provides that such circumstances are not a defense to an action for failure to pay support or enforce past due support. Thus, Nikki argues that Joel should have been found in contempt for failure to pay court-ordered child support.

The trial court has vast discretion in determining whether a party should be held in contempt for disobeying a court order, and its decision will be reversed only when the appellate court discerns an abuse of that discretion. *McDonald v. McDonald*, 08-1165 (La.App. 3 Cir. 3/4/09), 10 So.3d 780.

While we agree that Nikki's secreting of the minor children is not a defense to Joel's non-payment from May 2011 through January 2012, the trial court did not abuse its discretion in failing to find Joel in contempt. The trial court found that Nikki alleged that Joel was in arrears for more than $40,000.00, which it determined to be completely false. In its judgment it awarded Nikki $4,878.23 in arrears and declined to find Joel in contempt in part due to "Nikki's blatant and intentional failure to report accurately Joel's payments." This assignment of error is without merit.

## ASSIGNMENT OF ERROR THREE

Finally, Nikki argues that the thirty days of jail time imposed by the trial court for contempt was excessive. Although she concedes that the trial court did not abuse its discretion in finding her in contempt, she claims that the sentence

should be suspended, as the attorney fee award to Joel and the requirement that she pay court costs was sufficient. We disagree.

"Willfull disobedience of any lawful judgment, order, mandate, writ, or process of the court" is a constructive contempt of court. La.Code. Civ.P art. 224(2). Louisiana Revised Statute 13:4611(1)(d) provides for the punishments that can be imposed for contempt, including imprisonment for not more than three months. The trial court's written reasons indicate that it found Nikki to be lacking any credibility and in willful violation of the court's orders on numerous occasions thus warranting the thirty-day jail sentence. The trial court did not abuse its discretion. This assignment of error is without merit.

## CONCLUSION

The portion of the trial court's judgment suspending Joel's child support payments from May 2011 through January 17, 2012 is reversed, and Joel's suspension credit is reduced by $7,680.00. The remainder of the judgment is affirmed.

**REVERSED IN PART AND AFFIRMED IN PART**.

6