STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-287


GEORGE MASON, JR.

VERSUS

DEANNA HARBISON MASON


**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 73,601
HONORABLE C. ANTHONY EAVES, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


Pickett, J., concurs in part, dissents in part, and assigns written reasons.


AFFIRMED.

**Charles A. "Sam" Jones, III**
**Attorney at Law**
**Post Office Box 995**
**DeRidder, Louisiana 70634**
**(337) 463-5532**
**Counsel for Plaintiff/Appellee:**
        **George Mason, Jr.**

**Wes Bailey**
**Attorney at Law**
**109 South Third Street**
**Leesville, Louisiana 71446**
**(337) 404-7716**
**Counsel for Defendant/Appellant:**
        **Deanna Harbison Mason**

**Mary K. Beaird**
**Attorney at Law**
**109 South Third Street**
**Leesville, Louisiana 71446**
**(337) 944-0299**
**Court-Appointed Counsel for Minor Child**

**KEATY, Judge.**

Defendant/Appellant, Deanna Harbison Mason, appeals the trial court's judgment in favor of Plaintiff/Appellee, George Mason, Jr. For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

This child custody and visitation modification matter arose following the marriage and divorce of Deanna and George. They were married on January 8, 1994, and divorced on July 10, 2006. During their marriage, they produced two children: Colton W. Mason, born April 26, 1995; and Kara A. Mason, born June 19, 2000. Following their divorce, they entered into a Stipulated Judgment Of Custody which the trial court signed on November 9, 2006. Therein, they were granted joint custody of the minor children and were designated as co-domiciliary parents. Three custody modification trials subsequently ensued.

The first trial occurred on November 20, 2012, following Deanna's filing of her Rule For Contempt, For Modification And For Authority To Have Children Seen By A Counselor. Pursuant to its subsequent Judgment On Rules which was signed on July 16, 2013, the trial court awarded the parents joint custody of the minor children, designated George as Kara's domiciliary parent, and designated Deanna as Colton's domiciliary parent. Both parents were awarded reasonable visitation.

The second trial occurred on November 24, 2014, following Deanna's filing of her Rule To Modify Custody and George's filing of his Rule For Immediate Ex Parte Order Of Custody And/Or Civil Warrant For Custody Of Child. In its subsequent Judgment signed on February 18, 2015, the trial court maintained the

parents' joint custody of Kara and George's status as her domiciliary parent, with visitation granted in favor of Deanna and as provided for therein.[1]

The third trial, which is at issue in this appeal, occurred on June 3, 2015, following Deanna's filing of her Rule For Contempt And To Modify Custody on April 6, 2015, only six weeks after the previous judgment. The trial court rendered its ruling in open court and thereafter issued another written Judgment on June 14, 2015, wherein it dismissed Deanna's Rule for Contempt, denied her request for attorney fees, and denied her request for modification of custody.[2] It again awarded joint custody of Kara to both parents and maintained George's status as the domiciliary parent. It further modified the previous Judgment rendered on February 18, 2015, by reverting back to the standard plan regarding the exchange of Kara, limiting Deanna's visitation to three and four-day weekends, ordering Deanna to provide George a week's written notice regarding visitation, and ordering future communication between the parents to take place through a program called Family Wizard. Deanna filed a Motion For New Trial regarding the June 3, 2015 hearing, which was denied. Deanna appealed the trial court's Judgment rendered on June 3, 2015, and signed on June 14, 2015, as well as the trial court's denial of her Motion For New Trial.

On appeal, Deanna asserts the following assignments of error:

1.    The Trial Court erred in failing to admit Colton Mason's testimony.

2.    The Trial Court erred in denying the proffer of Colton Mason's testimony.

---

[1] Because Colton was no longer a minor child when the February 18, 2015 Judgment was rendered, he was not mentioned therein nor in subsequent judgments.

[2] The Judgment says, "Thus Done on the 17th June 2015," next to the trial judge's signature, whereas the Clerk of Court's Notice of Judgment states that it was signed on June 14, 2015. For purposes of this opinion, we will consider June 14, 2015 as the date it was signed.

3. The Trial Court's finding that the audio recording made by the mother of the child's distress while living with her father was ruled inadmissible.

4. The Trial Court erred in failing to allow testimony regarding allegations not specifically pleaded by Plaintiff-in-[R]ule.

5. The Trial Court erred in granting the Motion for Directed Verdict and Exception of No Cause of Action dismissing the modification of custody.

6. The Trial Court erred in granting the Motion for Directed Verdict and Exception of No Cause of Action dismissing the contempt of court.

7. The Trial Court erred in denying the Motion for New Trial.

8. The Trial Court erred when it failed to meet the standard of *Mulkey v. Mulkey*[, 12-2709 (La. 5/7/13), 118 So.3d 357,] as designated by the Louisiana Supreme Court.

9. The Trial Court erred when it modified the visitation schedule of Plaintiff-in-Rule on its own motion.

## STANDARD OF REVIEW

In the absence of manifest error or unless it is clearly wrong, an appellate court may not set aside a trial court's findings of fact. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The trial court's conclusions are given substantial deference by appellate courts in child custody matters. *Steinebach v. Steinebach*, 07-38 (La.App. 3 Cir. 5/2/07), 957 So.2d 291. "'The trial judge is in a better position to evaluate the best interest of a child from his observance of the parties and the witnesses and his decision will not be disturbed on review absent a clear showing of abuse.'" *Steinebach*, 957 So.2d at 294 (quoting *Deason v. Deason*, 99-1811, p. 2 (La.App. 3 Cir. 4/5/00), 759 So.2d 219, 220). The Louisiana Supreme Court and the Louisiana Legislature have noted "that the primary consideration and prevailing

3

inquiry is whether the custody arrangement is in the best interest of the child." *Steinebach*, 957 So.2d at 294.

Additionally, the supreme court in *Housley v. Cerise*, 579 So.2d 973, 976 (La.1991) (quoting *Sistler v. Liberty Mutual Insurance Co.*, 558 So.2d 1106, 1112 (La.1990)), stated that, "'if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" This court in *McCorvey v. McCorvey*, 05-174, p. 4 (La.App. 3 Cir. 11/2/05), 916 So.2d 357, 362, *writ denied*, 05-2577 (La. 5/5/06), 927 So.2d 300, also stated, "[t]he basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts."

## DISCUSSION

### I.  Assignments of Error No. 1 & No. 2

In her first and second assignments of error, Deanna contends that the trial court erred by failing to admit and by denying the proffer of Colton's testimony. She argues that the testimony at issue concerned Colton's deterioration of his relationship with George during his teenage years when they lived together. Deanna states that his testimony was relevant in that this deterioration was similar to the deterioration of the relationship which was occurring between Kara and George.

In Louisiana, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not

admissible." La.Code Evid. art. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403. Additionally, actions regarding modification of child custody orders were discussed in *Bergeron v. Bergeron*, 492 So.2d 1193, 1195 (La.1986) (emphasis added), wherein the supreme court stated that the party requesting modification is "required to show that a change in circumstances materially affecting the welfare of the child has occurred **since the prior order respecting custody**." This requirement "protects [the complainant's] adversary and the child from the vexation and expense attending multiple unjustified lawsuits, conserves judicial resources, and fosters reliance on judicial actions by minimizing the possibility of inconsistent decisions." *Id.*

The transcript of the hearing shows that the trial court initially allowed Colton's direct testimony that he had not called his father nor maintained a relationship with him since December 1, 2014. The transcript reveals that the trial court thereafter stopped Deanna's counsel's questions regarding their relationship by stating that, "[i]t has nothing to do with [Kara's] relationship, it has nothing to do with any advantage that she may be - - by residing in the State of Texas with her mother, her step-father and her brother[.]" The transcript indicates that the trial court allowed Colton's proffered testimony regarding his relationship with his father, which included his testimony that he did not "want to have a relationship with [George] because of what happened in the past[]" when they lived together. Deanna's counsel then asked Colton, "[W]hat happened to you when you were in your father's care?" Opposing counsel objected by stating, "that's going way back[]" to incidents occurring "before 2010 or in that period of time." The trial

5

court thereafter would not allow proffered testimony on incidents occurring prior to 2010, which pre-dated all three custody hearings, by stating:

> I'm not going to allow you to even proffer it. . . . [T]he fact is that there was a hearing in this matter in November and there's been other hearings and then you're wanting to bring something up prior to even all those hearings in this hearing. I don't know why that even needs to be proffered at this time.

The trial court did not err in limiting the proffered testimony to events occurring after 2010.

Deanna further cites La.Code Civ.P. art. 1636(A) (emphasis added), which provides: "When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, **or permit the party to make a statement setting forth the nature of the evidence**." The transcript contains numerous pages wherein Deanna's counsel discussed the nature of the evidence that she was seeking to proffer. The trial court also did not err in this regard. Accordingly, Deanna's first two assignments of error are without merit.

## II.    Assignment of Error No. 3

In her third assignment of error, Deanna contends that the trial court erred by excluding, as inadmissible evidence, the audio recording she made of Kara while Kara was crying as a result of the distress she experienced while living with her father. Deanna asserts that this recording reveals Kara's desire to live with her. She alleges that had the trial court listened to the audio recording, it would have found the evidence relevant.

Deanna testified at trial that this recording occurred on February 14, 2015, when she picked up Kara from her father. She testified that prior to the custody exchange, she pressed the record button on her telephone in the event "there was

6

anything said or done[]" during that time. Deanna testified that after the exchange and once she and Kara returned to the car, she hit the off button on her telephone and believed it had stopped recording. She testified that she did not look at her telephone until she arrived at home and realized that it was still recording. Deanna stated that the audio contained Deanna and Kara's conversation during their car ride and that Kara was crying.

The transcript further reveals that Kara was available and testified under oath with her counsel present. Although her testimony is sealed, the trial court stated in its reasons that, "There was no great outcry of emotions today by the child of her desire to go live with the mother or anything."

We, therefore, agree with the trial court that the audio recording was inadmissible as it is hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). "Hearsay is not admissible except as otherwise provided by this Code or other legislation." La.Code Evid. art. 802. Additionally, the testimony at issue is not an exception to the hearsay rule as provided in La.Code Evid. art. 801(D). The trial court, therefore, was not manifestly erroneous in excluding the audio recording, especially since the trial court allowed the proffer in the judgment signed October 19, 2015, and no proffer has been made by Deanna. Her third assignment of error is without merit.

## III. Assignment of Error No. 4

In her fourth assignment of error, Deanna contends that the trial court erred by failing to allow her counsel to elicit witness testimony at trial regarding allegations not specifically pled in her rule for custody modification. Deanna

focuses on questions that her counsel asked George which suggested that he failed in his medical obligation to Kara. Specifically, counsel asked George whether Kara had a pap smear, whether she had been administered Gardasil or any other Human Papillomavirus (HPV) vaccine, and whether he knew what an HPV vaccine was. The trial court's response was as follows: "[T]his whole line of questioning is not pled in your pleadings and, of course, we're a fact specific . . . pleadings State. And, you're not entitled to even ask these questions you're asking this gentleman. You have to put them in the petition[.]"

In order to determine the correctness of the trial court's decision, we look at Louisiana statutory and jurisprudential law regarding pleadings. "Louisiana's Code of Civil Procedure uses a system of pleading based upon the narration of factual allegations." *Udomeh v. Joseph*, 11-2839, p. 8 (La. 10/26/12), 103 So.3d 343, 348. "No technical forms of pleading are required. All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered paragraphs." La.Code Civ.P. art. 854. The petition "shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation[.]" La.Code Civ.P. art. 891(A). Material facts are pled when the pleader states "'what act or omission he or she will establish at trial[.]'" *Udomeh*, 103 So.3d at 349 (quoting *Greemon v. City of Bossier City*, 10-2828, 11-39, p. 8 (La. 7/1/11), 65 So.3d 1263, 1268).

In this case, and after reviewing Deanna's Rule For Contempt And To Modify Custody, we find that she failed to specifically plead or suggest that George's alleged failure to provide medical care was a reason for modification of the prior judgment. This was a material fact which she was required to plead in

order to satisfy Louisiana's fact-pleading rules. The trial court was not manifestly erroneous in this regard, and Deanna's fourth assignment of error is without merit.

**IV.    Assignments of Error No. 5 & No. 6**

In her fifth and sixth assignments of error, Deanna contends that the trial court erred in granting the Motion for Directed Verdict and Exception of No Cause of Action, dismissing the modification of custody and the contempt of court. Deanna alleges that the trial court's granting of George's oral exception violated La.Code Civ.P. art. 852, which provides that pleadings, such as exceptions, "shall be in writing[.]"

The directed verdict came after George's counsel stated the following at the end of trial:

> [W]e would move for a directed verdict and or urge a peremptory exception of no cause of action. There has been no show of a change of circumstances. This rule was filed two months after the last judgment and, really, if you count it I think it's about six weeks after the last judgment. There's been no expert testimony about detriment or potential harm to the child and this matter simply needs to be dismissed.

In its subsequent oral ruling, the trial court held:

> [O]n the contempt, I don't find there was any . . . showing of a willful disobedience which is what the law requires . . . so I'm going to deny the request for attorneys fees and costs that she's made in relation to that. . . . [S]o, I'm going to grant your directed verdict on that . . . Secondly . . . on the custody situation . . . I am going to, likewise, grant your motion for directed verdict on that. There has not been a material change in circumstances that are so deleterious to the child to justify a change or there was no clear, convincing evidence that harm that uprooting this child from where this child has always been . . . would be outweighed by any advantages.

We agree that exceptions must be in writing pursuant to La.Code Civ.P. art. 852. However, the statute dealing with objections raised by the peremptory exception, including the exception of no cause of action, states, in pertinent part:

"[T]he failure to disclose a cause of action . . . may be noticed by either the trial or appellate court on its own motion." La.Code Civ.P. art. 927(B). As shown in its oral ruling, the trial court found that there was no change in circumstances warranting custody modification. The trial court's granting of the exception of no cause of action, therefore, was appropriate in this regard.

Deanna further contends that the directed verdict was converted into an involuntary dismissal since this was a trial by judge and not jury. An involuntary dismissal is governed under La.Code Civ.P. art. 1672(B), which states:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

"The court's vast discretion in granting a motion for involuntary dismissal is reviewed under the manifest error standard." *Smith v. Sonnier*, 12-1408, p. 3 (La.App. 3 Cir. 4/17/13), 110 So.3d 1285, 1288.

In this case, the trial court's use of the term "directed verdict" rather than "involuntary dismissal" does not void its holding in light of *Folse v. Folse*, 98-1976, p. 20 (La. 6/29/99), 738 So.2d 1040, 1051 (quoting *State v. Langendorfer*, 389 So.2d 1271, 1276 (La.1980)), wherein the supreme court held: "We have previously held that a judge's 'slip of the tongue' is not reversible error." Thus, Deanna's case was appropriately dismissed, either by involuntary dismissal or peremptory exception of no cause of action.

Finally, Deanna contends that the trial court erroneously held that George was not guilty of contempt. "The trial court has vast discretion in determining

whether a party is in contempt of court and its decision will not be reversed absent and [sic] abuse of discretion." *McDonald v. McDonald*, 08-1165, p. 4 (La.App. 3 Cir. 3/4/09), 10 So.3d 780, 783. After reviewing the record, we find that the trial court did not abuse its discretion. As noted by the trial court in its oral ruling, the requirements of contempt were not met because Deanna failed to make "any showing of a willful disobedience which is what the law requires in relation to that[.]" Thus, the trial court did not err in this regard, and Deanna's fifth and sixth assignments of error are without merit.

## V.    Assignment of Error No. 7

In her seventh assignment of error, Deanna contends that the trial court erred in denying her Motion for New Trial because: the judgment was contrary to the law and evidence, as provided for in La.Code Civ.P. art. 1972(1); and there was good ground therefore, as provided for in La.Code Civ.P. art. 1973. "When reviewing the grant or denial of a motion for a new trial, an appellate court cannot reverse the trial court's decision unless an abuse of discretion can be demonstrated." *Wedgeworth v. Mixon*, 15-686, p. 9 (La.App. 3 Cir. 2/3/16), 184 So.3d 876, 883, *writ denied*, 16-422 (La. 4/22/16), 191 So.3d 1049.

In this case, the trial court listed multiple reasons in its oral ruling supporting its decision. As noted above, the trial court held that Deanna failed to prove a material change in circumstances that justified a change or failed to prove, by clear and convincing evidence, that the harm in uprooting Kara would be outweighed by any advantages. The trial court stated that it "heard very little about the advantages that she would receive" should custody be modified. The trial court noted Kara's preference to live with her mother, but stated that this preference arose because "the father disciplines this child[]" and that "the discipline is less with the

11

mother[.]" The trial court noted that many of "these allegations were previously raised in the previous hearing such as . . . the child's desire to reside . . . with the mother." It noted that Kara's grades have improved while residing with George. The foregoing ruling is supported by the evidence and testimony contained in the record.

Thus, the trial court did not abuse its discretion in this regard, and Deanna's seventh assignment of error is without merit.

## VI. Assignment of Error No. 8

In her eighth assignment of error, Deanna contends that the trial court erred when it failed to meet the standard in custody modification matters as designated by the supreme court in *Mulkey*, 118 So.3d 357. In *Mulkey*, the supreme court reversed the appellate court's ruling and reinstated the trial court's judgment modifying a child custody decree by awarding custody of the teenage son to his father. The supreme court explained: "We find in this case, where the parents are relatively equally balanced in terms of caring for the child, the preference of a mature and grounded teenager such as Matthew is entitled to great weight." *Id.* at 368. Deanna compares Kara's desire to live with her to Matthew's desire to live with his father in *Mulkey* and assumes that this preference relaxes the strict burden of proof enunciated in *Bergeron*, 492 So.2d 1193.[3] She asserts that had certain evidence been allowed into the record, the trial court would have noted Kara's parental preference and determined that a change in custody was warranted under *Mulkey*.

---

[3] At trial, the trial court told Deanna's counsel that "[t]his is a considered decree under Bergeron[.]" Her counsel responded by stating: "Yes, Your Honor. It was modified under Mulkey versus Mulkey."

Deanna's argument is without merit since *Mulkey* restates, rather than relaxes, the *Bergeron* burden of proof. This is evident in *Odell v. Odell*, 14-250, p. 9 (La.App. 3 Cir. 6/4/14), 139 So.3d 1275, 1281, *writ denied*, 14-1436 (La. 7/15/14), 145 So.3d 1034, wherein another panel of this court explained:

> Restating the *Bergeron* standard, the supreme court [in *Mulkey v. Mulkey*, 12-2709, p. 11 (La. 5/7/13), 118 So.3d 357, 365 (footnotes omitted)] has recently explained that:
>
>> When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.
>
> Thus, when a party seeks to change custody rendered in a considered decree, the proponent of change must not only show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody, but he or she must also meet the burden of proof set forth in *Bergeron*.

Deanna further argues that the trial court manifestly erred by not conforming its judgment in accordance with *Mulkey*. We find, however, that the facts in the instant matter are distinguishable from the facts in *Mulkey*. Specifically, in this case, approximately six weeks had elapsed between the last judgment and Deanna's filing of the instant Rule For Contempt And To Modify Custody, whereas over seven years had elapsed between the last judgment and rule for custody modification in *Mulkey*. In this case, the trial court found that no "material change in circumstances" had occurred in the four months between the last rule and the instant rule for custody modification, whereas the trial court in *Mulkey* found that approximately five material changes in circumstances had occurred in the seven-year period. The trial court in this matter found that Kara's grades had improved while she was living with her father whereas the trial court in *Mulkey*

found that the child's grades had declined while living with his mother. Thus, the trial court did not manifestly err in this regard, and Deanna's eighth assignment of error is without merit.

**VII. Assignment of Error No. 9**

In her ninth assignment of error, Deanna contends that the trial court erred by modifying her visitation schedule on its own motion despite not having any pleading or prayer for such relief requested by George. In support, she cites *Romero v. State Farm Fire & Casualty Co.*, 479 So.2d 694, 696 (La.App. 3 Cir. 1985), wherein the third circuit held that a nullity occurs when a judgment is rendered beyond the pleadings, and that "[a] claim not asserted in the answer or reconventional demand affords no basis for judgment for a defendant."

Deanna's argument lacks merit since visitation schedules can be altered when conditions warrant it, even when there lacks evidence supporting the modification of a prior considered custody decree. *Brantley v. Kaler*, 43,418 (La.App. 2 Cir. 6/4/08), 986 So.2d 188. In *Brantley*, the original custody arrangement via considered decree awarded the parents, Brittany Leckelt and Daniel Brantley (Danny), joint custody of the child, Daniel Brantley, and designated Danny as the domiciliary parent. *Id*. Brittany subsequently filed a petition to modify custody, alleging that Daniel was about to start Pre-K which would be impossible under the current week-on, week-off visitation schedule. *Id*. Danny filed an exception of no cause of action, alleging that the petition failed to meet the requirements for modification of a considered decree pursuant to *Bergeron*, 492 So.2d 1193. *Brantley*, 986 So.2d 188. There was nothing in the record indicating that Danny filed a memorandum or pleading requesting additional relief. *Id*. Following trial, the trial court granted Danny's exception of

14

no cause of action and declined to modify the prior custody decree. *Id.* The trial court, however, modified visitation by reducing Brittany's time to every other weekend from eight o'clock p.m. Friday to eight o'clock p.m. Sunday. *Id.* Brittany appealed, alleging that once the trial court found no cause of action, it lacked authority to modify the visitation schedule. *Id.*

On appeal, the second circuit affirmed the trial court's judgment by stating the following:

> We recognize that as a practical matter, courts may "tweak" visitation schedules even when the evidence will not support modifying a prior considered decree under *Bergeron*. *See*, *e.g., Silbernagel v. Silbernagel*, 06-879 (La.App. 5 Cir. 4/11/07), 958 So.2d 13. Visitation is always open to change when the conditions warrant it. *Gaskin v. Henry*, 36,714 (La.App. 2 Cir. 10/23/02), 830 So.2d 471. We are apprehensive of what happened here: applying the more flexible standard of visitation to circumvent the principles and protections announced in *Bergeron*, [492 So.2d 1193]. Here, however, the parties conceded, and the evidence showed, a material change of circumstances warranting a modification of custody under *Bergeron*, so it was ultimately unnecessary for the court to frame its remedy as an adjustment of visitation.
>
> . . . .
>
> In short, there is no strong evidence favoring or disfavoring one party over the other. We are therefore obligated to respect the discretion of the district court. *Bergeron v. Bergeron*, *supra*; *AEB v. JBE*, [99-2668 (La. 11/30/99), 752 So.2d 756]. With the evidence evenly balanced, there is simply no basis to disturb the award. *Bergeron v. Bergeron*, *supra*; *Hendrick v. Hendrick*, 27,302 (La.App. 2 Cir. 8/23/95), 660 So.2d 99. We cannot say that this judgment undermines the child's best interest, and we perceive no abuse of the district court's great discretion.

*Id*. at 191-92.

In the instant matter, the trial court modified Deanna's visitation schedule on its own motion despite not having a prayer for such relief requested by George, just as in *Brantley*, 986 So.2d 188. The trial court, in this matter, stated in its written ruling that it was "going to modify the prior judgment only to help these people . . .

solve some of their issues." These minor modifications included reverting back to the standard plan regarding exchanging Kara, limiting Deanna's visitation to three and four-day weekends, ordering Deanna to provide George a week's written notice regarding visitation, and ordering future communication between the parents to take place through a program called Family Wizard. Just as in *Brantley*, 986 So.2d 188, we cannot say that this judgment undermines Kara's best interest, and we perceive no abuse of the trial court's great discretion.

Deanna also invoked a summary proceeding rather than an ordinary proceeding when she filed her Rule For Contempt And To Modify Custody. "Summary proceedings are those which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all the formalities required in ordinary proceedings." La.Code Civ.P. art. 2591. Summary proceedings may be used for trial or disposition of "[a]n issue which may be raised properly by . . . [a] rule to show cause." La.Code Civ.P. art. 2592(3). Summary proceedings may also be used for trial or disposition of "[t]he original granting of, subsequent change in, or termination of custody, visitation, and support for a child[.]" La.Code Civ.P. art. 2592(8). The types of pleadings used in summary proceedings are discussed in La.Code Civ.P. art. 2593 (emphasis added), which provides:

> A summary proceeding may be commenced by the filing of a contradictory motion or by a rule to show cause, except as otherwise provided by law.
>
> Exceptions to a contradictory motion, rule to show cause, opposition, or petition in a summary proceeding shall be filed prior to the time assigned for, and shall be disposed of at, the trial. **An answer is not required**, except as otherwise provided by law.
>
> No responsive pleadings to an exception are permitted.

In this case, George was not required to file an answer or response to Deanna's Rule For Contempt And To Modify Custody under La.Code Civ.P. art. 2593. Accordingly, the trial court was not manifestly erroneous, and Deanna's ninth assignment of error is without merit in this regard.

## DECREE

The trial court's judgment in favor of Plaintiff/Appellee, George Mason, Jr., is affirmed. All costs associated with this appeal are assessed to Defendant/Appellant, Deanna Harbison Mason.

**AFFIRMED.**

GEORGE MASON, JR.

VERSUS

DEANNA HARBISON MASON

**PICKETT, J., concurring in part and dissenting in part.**

I agree with the majority on all but one issue in this matter. I disagree with the majority's conclusion that because Deanna filed a summary proceeding seeking a change of custody, the trial court's modification of her visitation schedule, without that issue being raised by the father in pleadings or orally at trial, does not constitute error. An answer need not be filed in a summary proceeding. La.Code Civ.P. 2592. An answer need only admit or deny allegations stated in the petition and assert any affirmative defenses to the petitioner's claim. La.Code Civ.P. arts. 1001-1005. Deanna did not raise the issue of modifying her visitation schedule in her pleadings. Therefore, the fact that George did not file an answer has no bearing on whether the trial court had the authority to modify Deanna's visitation.

There are summary proceeding cases that hold the trial court did not err in granting relief not specifically sought in the moving party's rule or motion. *See Brooks v. Brooks*, 469 So.2d 378 (La.App. 2 Cir. 1985) (mother filed a rule for sole custody; husband urged at trial that joint custody was in the best interest of the child), and *Perkins v. Perkins*, 388 So.2d 475 (La.App. 2 Cir. 1980) (mother sought increase in child support; husband argued at trial that any increase in child support should be reduced upon oldest child turning eighteen, which was twenty-four days following the trial). Although the relief granted in those cases varied

1

from the relief sought in the mover's pleadings, the complained of relief arose directly from an issue asserted by the mover at trial. The relief requested and awarded in each case was in response to an affirmative defense to the relief sought.

The majority cites *Brantley v. Kaler*, 43,418 (La.App. 2 Cir. 6/4/08), 986 So.2d 188, to support its position. *Brantley* is not on all fours with this case. In *Brantley*, the second circuit court of appeal affirmed the trial court's modification of a parent's visitation schedule when the issue was not before the court. The second circuit initially noted its concern that the trial court's action was "problematic" and possibly "legally erroneous" but affirmed the modification. *Id.* at 191. In affirming the trial court's action, the court specifically noted, "the parties conceded, and the evidence showed a material change of circumstances warranting a modification of custody under *Bergeron*, so it was ultimately unnecessary for the court to frame its remedy as an adjustment of visitation." *Id.* at 192.

That is not the case here. The facts of *Stephens v. Stephens*, 30,498 (La.App. 2 Cir. 5/13/98), 714 So.2d 115, are similar to the facts here. In *Stephens*, the trial court's award of sole custody of the children to the father when the mother sought designation as domiciliary parent was held to exceed the court's authority because the father did not request sole custody in a pleading or verbally in open court.

Deanna did not raise the issue of visitation in her pleadings, and George did not raise the issue at trial. Deanna had no notice that her visitation was subject to modification, and she objected to the trial court's modification of her visitation at trial, arguing the issue was not before the court. Therefore, she had no opportunity to present evidence on this issue. I respectfully dissent.

2